# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTHA L. DIAMOND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:12-cv-458 |
| | ) | |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| LAWRENCE COUNTY AREA | ) | |
| VOCATIONAL TECHNICAL SCHOOL | ) | |
| AUTHORITY d/b/a LAWRENCE COUNTY | ) | |
| CAREER AND TECHNICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Martha Diamond brings suit against Lawrence County Career and Technical Center ("CTC") alleging that age discrimination was why she was not appointed as the Principal at the CTC, in violation of the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). While Plaintiff was passed over for the position and a substantially younger individual was selected, the Defendant denies that Diamond's age was a factor in the selection process. The CTC has moved for summary judgment, arguing that Diamond failed to meet her burden of showing that Defendant's legitimate, nondiscriminatory rationale for the employment decision was pretext for age discrimination. These matters, having been fully briefed by the parties and oral argument having been presented, are ripe for disposition. For the reasons which follow, the CTC's Motion for Summary Judgment is granted.

I.  **BACKGROUND**

The material facts are as follows. Diamond was born on September 21, 1952, and she was age 58 during the CTC's interviewing process for the Principal position in June 2011. ECF Nos. 12 ¶ 3; 16 ¶ 3. Diamond earned a bachelor's degree in nursing from the University of Pittsburgh, a certification in vocational education from Indiana University of Pennsylvania, vocational I and II instructional certifications, a Master's degree and secondary principal's certification from Westminster College in 2002, and a doctoral degree from the University of Pittsburgh in education, administration policy studies, leadership program, which she earned in 2007. ECF Nos. 12 ¶ 24; 16 ¶ 24. Diamond has been employed by the CTC since August 1984, first as a part-time instructor in the practical nurse program, then as a part-time instructor in 1987 in the health occupations/health assistant program, and subsequently as a full-time instructor in the health occupations/health assistant program beginning in 1996 or 1997. ECF Nos. 12 ¶ 25; 16 ¶ 25.

The CTC is a vocational-educational center for secondary students in Lawrence County. ECF Nos. 12 ¶ 5; 16 ¶ 5. The CTC's governing body is the Joint Operating Committee ("JOC") which consists of twelve (12) members. ECF Nos. 12 ¶ 7; 16 ¶ 7. Andrew Tommelleo is the Director of the CTC. ECF Nos. 12 ¶ 8; 16 ¶ 8. His date of birth is September 30, 1950, and he was 50 years of age as of June 2011. ECF Nos. 12 ¶ 8; 16 ¶ 8. From March 2005 through June of 2010, the three administrative positions at the CTC consisted of the Director, Principal, and Dean of Students. ECF Nos. 12 ¶ 9; 16 ¶ 9. In June 2010, then-Principal Brad Ovial retired from the CTC and was not replaced. ECF Nos. 12 ¶ 12; 16 ¶ 12. Tommelleo assumed the duties of Principal in addition to those of the Director for the 2010-11 school year (July 2010 through June 2011). ECF Nos. 12 ¶ 12; 16 ¶ 12. In June 2011, the Dean of Students, Joseph Cubellis, retired

and that position was eliminated. ECF Nos. 12 ¶ 13; 16 ¶ 13. In June 2011, the CTC sought to fill the open Principal position. ECF Nos. 12 ¶ 13; 16 ¶ 13.

The CTC received approximately 6 to 8 applications total for the Principal's position, which included three (3) "in-house" applicants -- Dr. Diamond, Regina Hiler, and Nicholas Neve. ECF Nos. 12 ¶ 14; 16 ¶ 14. Tommelleo decided that only the in-house candidates would be interviewed. ECF Nos. 12 ¶ 15; 16 ¶ 15. All three of these individuals had the secondary school principal's certificate required for the position. ECF Nos. 12 ¶ 14; 16 ¶ 14.

On the day of the interviews Neve, a social studies teacher at the CTC who was in his 50's, was in an automobile accident, and could not attend his interview. ECF Nos. 12 ¶¶ 14,16; 16 ¶¶ 14, 16. Tommelleo then decided that Neve would not be interviewed. ECF Nos. 12 ¶ 16; 16 ¶ 16. Tommelleo explained at his deposition that the rationale behind this decision was that Neve was having personal issues that he was "bringing to work" and that he "was heading in the wrong direction" Tommelleo Dep. 59:21-60:10, 61:12-17, Dec. 4, 2012, ECF No. 14-2. Neve attended the June 16th Joint Committee meeting to voice his displeasure in not being given an interview. *Id.* 62:1-22. At his deposition on December 13, 2012, Neve testified that after reflecting back on the situation, Tommelleo's assessment of his situation at the time was correct. ECF Nos. 12 ¶ 18; 16 ¶ 18. Diamond testified at her deposition that she believed that Neve was treated poorly in this regard because of his age. ECF Nos. 12 ¶ 17; 16 ¶ 17.

This left two candidates to be interviewed -- Diamond and Hiler. Hiler's date of birth is September 27, 1980 and she was 30 years old at the time. ECF Nos. 12 ¶ 4; 16 ¶ 4. Hiler obtained a bachelor's degree from Geneva College in English secondary education in 2002, and a Master's degree in curriculum and instruction from Gannon University in 2007. ECF Nos. 12 ¶ 26; 16 ¶ 26. She also has a supervisor certificate in certificate curriculum and instruction issued

in 2010, and completed course work for a secondary principal's certificate in December 2009, the certificate was issued in 2011. ECF Nos. 12 ¶ 26; 16 ¶ 26. Both certificates were for work through Gannon University. ECF Nos. 12 ¶ 26; 16 ¶ 26. Hiler's professional work history as a teacher includes the following: a day-to-day substitute in secondary education positions at Lincoln High School in the Ellwood City Area School District from 2003-04; a full-time secondary English teacher at Lincoln High School from 2004-05; and a full-time English instructor at the CTC from July 2006 through June 2011. ECF Nos. 12 ¶ 27; 16 ¶ 27.

Although both Diamond and Hiler had the required secondary principal's certificate, neither had any experience as a Principal as of June 2011. ECF Nos. 12 ¶ 28; 16 ¶ 28. Since 2007, Diamond had applied for eight (8) other Principal positions in the Lawrence/Mercer County area. ECF Nos. 12 ¶ 28; 16 ¶ 28. This was the first Principal position to which Hiler had applied. ECF Nos. 12 ¶ 28; 16 ¶ 28.

Tommelleo identified the individuals who would serve on the Interview Committee, which would then make a recommendation for hiring to the JOC. ECF Nos. 12 ¶ 19; 16 ¶ 19. The Interview Committee was comprised of Tommelleo, Debra Allebach (a JOC board member from Union Area School District's Board of School Directors and a teacher at Neshannock Township School District with more than 28 years teaching experience); and four members of the CTC faculty -- Christina Garczewski (special education teacher), Margy Gerhardt (librarian), Morgan Lynch (guidance counselor), and Matt Barker (math teacher). ECF Nos. 12 ¶ 20; 16 ¶ 20. Except for Morgan Lynch (who asked to be on the committee because, as a guidance counselor, she must have a close working relationship with the principal and wanted to be able to ask questions) and Debra Allebach (who also asked or volunteered to be on it), the others were asked to serve by Tommelleo. ECF Nos. 12 ¶ 19; 16 ¶ 19. The dates of birth of the individuals

4

who served on the Interview Committee are as follows: Tommelleo (September 30, 1960); Debra Allebach (July 29, 1955); Christina Garczewski (November 5, 1983); Margy Gerhardt (February 2, 1971), Matt Barker (June 25,1974) and Morgan Lynch (June 27, 1981). ECF Nos. 12 ¶ 23; 16 ¶ 23.

Steve Shulin, a CTC instructor in auto body repair, was also selected by Tommelleo to be on the Interview Committee but was later excused due to his wife going into labor on the day of the interviews. ECF Nos. 12 ¶ 20; 16 ¶ 20. Shulin was believed to be in his 40's. ECF Nos. 12 ¶ 21; 16 ¶ 21. Tommelleo had also asked Cheryl Kimmel, a JOC member, to serve on the Committee -- her date of birth is November 17, 1948. ECF Nos. 12 ¶ 22; 16 ¶ 22. Kimmel originally agreed to do so but subsequently withdrew because she personally knew and was distantly related to Neve by marriage. ECF Nos. 12 ¶ 22; 16 ¶ 22.

Allebach had never personally met either Hiler or Diamond before the day of the interviews but had been present at several JOC meeting where Diamond had spoken. ECF Nos. 12 ¶ 20; 16 ¶ 20. Diamond confirmed in her deposition that she had never met Allebach prior to her interview, that she only knew of her because of her service on the JOC, and that she did not know what Allebach's professional background was. ECF Nos. 12 ¶ 20; 16 ¶ 20.

Diamond and Hiler were interviewed by the Interview Committee on June 13, 2011. ECF Nos. 12 ¶ 29; 16 ¶ 29. The members of the Interview Committee unanimously believed that Hiler performed better than Diamond in their respective interviews and was the better candidate for the Principal position. ECF Nos. 12 ¶ 30; 16 ¶ 30.

During their depositions, members of the Interview Committee testified that Hiler demonstrated better leadership and communication skills than Diamond in both her interview and, for those who had worked with the candidates, in the work place. *See* Tommelleo Dep.

86:11-88:24; Margy Gerhardt Dep. 18:9-20:17, Dec. 4, 2012, ECF No. 14-8; Matt Barker Dep. 15:5-16:1, 20:3-21:14, Dec. 4, 2012, ECF No. 14-9; Christina Garczewski Dep. 14:12-25, 15:22-16:4, Dec. 14, 2012, ECF No. 14-10; Debra Allebach Dep. 18:1-19:4, 27:22-28:25, Dec. 13, 2012, ECF No. 14-5. At her deposition, Diamond agreed that leadership and skills related to leadership are important factors or qualities to have in order to be a building supervisor/principal. ECF Nos. 12 ¶ 36; 16 ¶ 36. Also, the Interview Committee members testified that Diamond seemed to provide the same or similar answers to each question asked of her, and by doing so failed to answer certain questions. ECF Nos. 12 ¶ 31; 16 ¶ 31. Members of the Interview Committee also testified at their depositions that they did not believe that the age of the candidates played a role in their recommendation. *See* Tommelleo Dep. 92:18-93:2; Morgan Lynch Dep. 27:15-28:2, Dec. 4, 2012, ECF No. 14-7; Gerhardt Dep. 20:23-21:21; Barker Dep. 21:15-25; Allebach Dep. 29:1-11.

Allebach, an Interview Committee member and JOC board member, opined that Diamond was perceived to have less passion for the position and students than Hiler. *See* Allebach Dep. 18:7-9, 28:15-16. "I thought that Regina [Hiler's] interview was exemplary, that she displayed the qualities we want to see in [a] principal. She showed leadership. She showed passion for her students, and that I truly felt that she would do a terrific job. She would be a team player." *Id.* 27:25-28:5. On the other hand,

> [Diamond] really, truly never expressed passion for the kids. Her one passion was vocational education. That was the only thing she ever said. She never truly answered one scenario, how you would deal with an irate parent, how you would deal with this. I think I had probably four scenario questions. And she, again, never answered any of them. It was like I was -- it was like every question I asked she gave me the same response, and never once did she vary. So I saw no leadership qualities. I didn't see anything outstanding.

6

*Id.* 28:15-25. After the interviews, the committee discussed the candidates' strengths, weaknesses, and who was thought to be the best candidate. Allebach stated that "I think I sort of led that discussion . . . I think I led the discussion because I think out of probably all of the people that were in there I probably had the most experience other than Andy, and I felt very strongly that Regina was the better candidate." *Id.* 21:25-22:10.

The JOC met on June 16, 2011 with the hiring of the new Principal on the agenda. The JOC met in an executive session to discuss the candidacy for the Principal position prior to the public comments session. Tommelleo and Allebach reported the recommendation of the Interview Committee that Hiler be hired as Principal to the JOC. ECF Nos. 12 ¶ 37; 16 ¶ 37. Some members of the JOC expressed concerns regarding the interview process, including the interviewing of only internal candidates and having only one round of interviews as opposed to several. Kimmel Dep. 10:15-22, 12:9-13:1, Dec. 28, 2012, ECF No. 14-6. The JOC ultimately relied on the recommendations of Allebach and Tommelleo, and hired Hiler by a vote of 9-1 (2 members absent). ECF Nos. 12 ¶¶ 38-39; 16 ¶¶ 38-39. Cheryl Kimmel, a member of the JOC, testified at her deposition that she did not believe that the age of the candidates played a role in the recommendation by the Interview Committee or the JOC's hiring decision. *See* Kimmel Dep. 13:5-13.

Mary Ann Tofel was the one JOC board member who voted "no" to hire Hiler. When asked "[i]n your years on the board, did you ever have a sense that Mr. Tommelleo preferred younger workers to older workers?", she responded "I would have to say there is a possibility." Tofel Dep. 15:23-16:1, Dec. 28, 2012. When asked for concrete examples, Tofel responded that "Mr. Tommelleo was not fond of a strong female. Maybe I can say that, a strong female, somebody who was vocal, my opinion," *id.* 16:20-23, but proffered no examples.

Her deposition also reflects the following testimony:

> Q. Do you feel the recommendation of Miss Hiler was based on age?
> A. Yes, I did. I definitely did.
> Q. And was that—what was that based on?
> A. Why did I feel that?
> Q. Yeah.
> A. When I sat back and—I didn't know this little Miss Hiler. I have no idea. I think I saw her a couple times, and then, you have Dr. Diamond, who I have no idea what her age is, but they are two different looking people. When that came up, when I—when the recommendation came up, I remember the Hiler recommendation, and immediately that just hit my head. I was like, come on.

*Id.* at 17:4-17. Tofel also expressed that "[s]ome people, excuse me, are very vulnerable, and some people when they are on a board want to impress a director, a superintendent, etc. and whatever and are basically yessers (phonetic)." *Id.* 17:25-18:5.

Rena Young, a CTC learning support teacher (who was not part of the interviewing or selection process), testified at her deposition that after a June 27, 2011 JOC meeting:

> A. . . . That Mr. Martin said to us that they asked -- they tried -- they asked -- they told Andy, Mr. Tommelleo, that they wanted to hire Martha instead of Regina, and that Andy wouldn't hear it. Andy told them he doesn't need anybody telling him who to hire.
> Q. Did Mr. Martin put any context as to where those discussions took place?
> A. No, but I took it as that it happened right there in the meeting because there was an executive session.
> Q. Any other meetings where the issue came up?
> A. Yes.
> Q. When?
> A. There was a meeting at Shenango on July 13, 2011.
> Q. Okay. What do you recall being discussed relative to the principal interviewing process at that meeting?
> A. Before the meeting even started, Mrs. Tofel came up to me and told me that she had several board members that told her that she was the only one that voted right.

Young Dep. 57:2-23, Dec. 13, 2011, ECF No. 17-1. Dennis Digianvincenzo, a JOC board member, also testified that "[t]hat probably the most qualified person wasn't selected." DiGianvincenzo Dep. 14:2-3. Ronald Martin, a JOC board member, testified at his deposition

8

that "Andy [Tommelleo] runs the show here. Whatever he does, he does. I have no say so over it." Martin Dep. 14:1-2, Dec. 28, 2012. Young also opined that:

> I realized how the administration and some of my colleagues beliefs are that they do believe that looks are important. . . . whenever you look at everything that has been going on in the building, the high heels have gotten higher. The skirts seem to get shorter, the dresses tighter, and obviously, one aspect is when you look at somebody that's, you know 60, almost 60 years old, they don't have the same look esthetically pleasing to some people given their age.

*Id.* 103:23-104:9. Young further explained that

> when you're talking about somebody that is significantly younger versus older, there is a sense of that the person that is more seasoned and not a veteran, that is a person that more often than not, more likely than not, you're not going to be able to use that person as a puppet. You're not going to be able to control and manipulate a person like that . . . .

*Id.* 104:10-16.

Diamond filed her federal Complaint against the CTC on April 10, 2012. ECF No. 1. The CTC filed its Motion for Summary Judgment on January 31, 2013. ECF Nos. 11, 12, 13, 14. Plaintiff filed a Response, ECF Nos. 16, 17, and Defendant filed a Reply. ECF Nos. 18, 19. Oral argument took place before this Court on April 12, 2013.

## II. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In other words, summary judgment may be granted only if there exists no genuine

issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986).

In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir.2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *See id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

## III. DISCUSSION

"The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (citing 29 U.S.C. § 623(a)(1)). "Age discrimination may be established by direct or indirect evidence." *Id.* The Supreme Court has held that to "establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see Fasold v.*

*Justice*, 409 F.3d 178, 183 (3d Cir. 2005) ("In order to prevail on a claim of intentional age discrimination, a plaintiff must prove that his or her age actually motivated or had a determinative influence in the adverse employment action in question.").

Here, Diamond seeks to establish a claim of age discrimination through circumstantial evidence. ECF No. 17 at 4. A claim under the ADEA based on indirect evidence is evaluated pursuant to the *McDonnell Douglas* tripartite burden-shifting analysis. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009):

> Under *McDonnell Douglas,* the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a *prima facie* case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. At all times, however, the burden of persuasion rests with the plaintiff.

*Id.* at 689-90 (citations omitted).

To demonstrate that the defendant's proffered rationale is pretext for age discrimination, "a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (a plaintiff may survive summary judgment "by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."); *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (plaintiff must show, through evidence, "*both* that the reason was false, *and* that discrimination was the real reason.").

The Third Circuit has explained that in order to demonstrate that the defendant's proffered rationale is pretextual under the first prong,

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

*Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (quoting *Fuentes*, 32 F.3d at 765). Under the second prong, a plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Keller*, 130 F.3d at 1111 (quoting *Fuentes*, 32 F.3d at 762).

Here, Defendant admits that Diamond has made out a prima facie case. Similarly, Diamond stipulates that Defendant met its burden of production by proffering legitimate, non-discriminatory reasons for not hiring the Plaintiff. ECF No. 17 at 4-5.[1] Consequently, the crux of the issue is whether Diamond has put forth evidence sufficient to demonstrate to a jury that the CTC's proffered rationale was pretext for age discrimination.

The CTC submits, and supports with undisputed record evidence, that the Interview Committee unanimously concluded that Hiler demonstrated better communication and leadership skills that were necessary for the principal position in both her interview and, for those who had

---

[1] Oral argument demonstrated that Counsel on both sides have zealously represented their clients in both their pleadings and at oral argument. The Court commends both counsel in efficiently sifting through the minutiae of the case and focusing at this point on the core issues at hand, rather than fruitlessly arguing each and every possible point of theoretical disagreement.

12

worked with the candidates, in the workplace. ECF No. 13 at 12-16. Furthermore, at their depositions, the members of the Interview Committee testified that age did not play a role in their recommendation to hire Hiler rather than Diamond. *Id.* at 15-16.

Diamond contends that she "does not premise her claim of age discrimination on the selection process itself," ECF No. 17 at 6, but on the premise that CTC Director Tommelleo constructed "a partisan Interview Committee that would cater more favorably to a younger candidate, effectively shutting out consideration for an older candidate less receptive to administrative posturing." *Id.* at 6. Plaintiff argues that Tommelleo had "engendered a dominant administrative culture" where "faculty and board dissention were inadvisable" during his time as director and principal and that he sought, through the composition of the Interview Committee, to maintain his control and the status quo that he established at CTC. *Id.* at 6, 9. Plaintiff then points to numerous factors and depositions, and argues that "[o]ne may infer from the totality of the circumstances that age was undoubtedly a motivating factor in the hiring of Hiler, and not Diamond." *Id.* at 10.

Based on the record here, the makeup of the Interview Committee and Tommelleo's role in selecting its members cannot establish that the CTC's rationale was pretext for age discrimination. The ages of the members of the Interview Committee were as follows: 27, 29, 36, 40, 50, and 55. ECF Nos. 12 ¶ 23; 16 ¶ 23. Four of the members were closer in age to Hiler, and two members were closer in age to Diamond. Both Morgan Lynch and Debra Allebach, ages 29 and 55 respectively, had asked or volunteered to be on the Committee, and Tommelleo put them on it. ECF Nos. 12 ¶ 19; 16 ¶ 19. The record indicates that Tommelleo had even asked Steve Shulin, who was in his 40's, and Cheryl Kimmel, age 62, to be on the Committee, but that personal reasons precluded their participation. ECF Nos. 12 ¶¶ 20-23; 16 ¶¶ 20-23. Moreover, all

13

members of the Interview Committee, across all ages, believed that Hiler performed better than Diamond in their respective interviews and was the better candidate for principal. ECF Nos. 12 ¶ 30; 16 ¶ 30. The makeup of the Committee does not support an inference of unlawful age animus.

To demonstrate Tommelleo's control over the selection process, Plaintiff next relies on the fact that Ronald Martin, a JOC board member, testified that "Andy [Tommelleo] runs the show here. Whatever he does, he does. I have no say so over it." Martin Dep. 14:1-2. However Martin was not on the Interview Committee. Furthermore, in the same paragraph of his deposition, Martin stated "*She* told me how to vote for who was the best interview. That's what I did." *Id.* 14:13-15 (emphasis added). Because Allebach and Tommelleo were the two individuals who presented the JOC with the Interview Committee's recommendation, Martin in using the word "she," is presumably referring to Allebach and not Tommelleo. Moreover Allebach, a 55-year-old Interview Committee and JOC member who was not selected by Tommelleo, testified that she (not Tommelleo) was the one who took charge of the Committee's discussion of the candidates. Allebach Dep. 21:25-22:10. In this regard, Plaintiff fails to present any evidence sufficient to allow a rational trier of fact to conclude that Tommelleo constructed and then controlled a partisan Committee to not hire Diamond on the basis of age.[2]

Diamond then argues that the CTC has not proffered any objective basis for the distinction between the candidates, and suggests that Diamond was the better candidate and more qualified than Hiler. ECF No. 17 at 5-6. Plaintiff also points to JOC member Dennis DiGianvincenzo's testimony that "probably the most qualified person wasn't selected." DiGianvincenzo Dep. 14:2-3. First, at this stage in the *McDonnell Douglas* test, the burden of

---

[2] Further, teacher Rena Young's reporting of the out-of-court statements of Martin, and the musings of JOC Member Tofel about "possibilit[ies]" and "this little Miss Hiler" without much more, do nothing to create an inference of age discrimination.

production and persuasion rest on the plaintiff. *City of Allentown*, 589 F.3d at 690-91. Thus, the CTC's failure to present an objective basis (beyond the unanimous recommendation of the Interview Committee and the 9-1 public, recorded vote of the JOC to hire Hiler) is inconsequential as it has already proffered a legitimate, non-discriminatory rationale supported by record evidence to meet its burden of production. Secondly, Plaintiff's argument ignores the unanimity of the Interview Committee in selecting Hiler as the better candidate.[3] Third, with respect to Plaintiff allegedly being more qualified, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Keller*, 130 F.3d at 1109 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)); *Norman v. Reading Sch. Dist.*, No. 08-4266, 2010 WL 1348455, at *5 (E.D. Pa. Mar. 30, 2010) ("The inquiry is whether the defendant was motivated by discriminatory animus, not whether the defendant was wise, shrewd, prudent or competent."). Even DiGianvincenzo's testimony (which does not reference age and which also apparently impeaches his own public vote) fails to raise a reasonable inference that Diamond was not selected due to her age.

Plaintiff also suggests that the Committee members' testimony, in which they denied that age played any role in their recommendation of Hiler, is self-serving in order to conceal a hiring scheme and therefore the trustworthiness of the statements hinge on a credibility determination. ECF Nos. 17 at 11; 16 ¶¶ 33-34. Diamond cites to *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 639 (3d Cir. 1993), for the proposition that this Court should not engage in such a determination. However, challenging generally the credibility of a movant's witnesses, without any supporting evidence of unlawful motive, does not itself create a question of material fact

---

[3] Even so, the CTC argues that the record reflects another basis -- the candidates' communication skills in that all members of the Interview Committee felt that Diamond provided virtually identical answers to varied questions at her interview, and therefore failed to answer certain questions. ECF No. 18 at 3.

15

barring summary judgment. *Mohney v. Hageter*, No. 11-340, 2013 WL 391155, at *6 (W.D. Pa. Jan. 30, 2013). Even in *Josey*, the Court noted that "circumstantial evidence [had] cast doubt on the employer's reasons." 996 F.2d at 639. Here, Plaintiff fails to point to any evidence -- direct or circumstantial -- that would suggest that the Interview Committee members' testimony was inconsistent, incoherent, or implausible, or a cover-up of age discrimination on their part in hiring Hiler. *Keller*, 130 F.3d at 1108-09.

Plaintiff also points to the deposition of Mary Ann Tofel. Tofel testified that she felt the Interview Committee's recommendation to hire Hiler was based on age. Tofel Dep. 17:4-6. When asked why she felt that way, she explained:

> When I sat back and—I didn't know this little Miss Hiler. I have no idea. I think I saw her a couple times, and then, you have Dr. Diamond, who I have no idea what her age is, but they are two different looking people. When that came up, when I—when the recommendation came up, I remember the Hiler recommendation, and immediately that just hit my head. I was like, come on.

*Id.* 17:10-17. When asked if she thought Tommelleo preferred younger workers to older workers, she responded "I would have to say there is a *possibility*." *Id.* 15:23-16:1 (emphasis added). However, when asked for concrete examples, she proffered no examples and responded that "Mr. Tommelleo was not fond of a strong female." *Id.* 16:21-22. Tofel's non-fact based assessment of a "possibility" cannot carry the day at trial, and any relationship between a "strong female" and "age discrimination" is logically nonexistent, and fails to show that Defendant's rationale was pretextual.

Diamond also relies on the deposition of Rena Young, a CTC teacher, who testified at her deposition that "looks" were important to the administrative staff and that older people are harder to control and manipulate. Young Dep. 103:23-104:16. However, when asked if Young knew if any member of the Interview Committee considered Diamond's age she responded "No, I do not

16

know that. I can only assume . . . if I had to bet that they are going to want their friend to get the position over somebody that is significantly older and is a different person." *Id.* 105:15-106:4. Young, who has no personal knowledge of the hiring process here, offers no basis for a lay opinion about the ability to control or manipulate "older people" and only general speculative statements and suppositions that cannot support an inference that age was the "but-for" cause in the decision to hire Hiler rather than Diamond.

Finally, Diamond refers to Tommelleo's decision to rescind the interview slot of Nicholas Neve, the original third candidate who was in his 50's, after an automobile accident as illuminating Tommelleo's "unfettered discretion in hiring matters." ECF No. 16 ¶ 16. First, Tommelleo having such "unfettered discretion" bears no relationship to the issue of unlawful discrimination. Second, Tommelleo testified that he did so because Neve was experiencing personal issues at home that impacted him at work. Plaintiff argues that this was just another step to make sure an older candidate did not receive the position, and Diamond testified at her deposition that she believed that Neve was treated poorly in this regard because of his age. ECF Nos. 12 ¶ 17; 16 ¶ 17. However, Neve testified that after reflecting back on the situation, Tommelleo's assessment of his situation at the time was correct. ECF Nos. 12 ¶ 18; 16 ¶ 18. While Plaintiff attributes this to "mere pandering" to his employer, Diamond fails to point to any evidence to discredit Neve's statement.

Even considering the totality of the circumstances in the light most favorable to Diamond, Plaintiff has not presented evidence sufficient to create a genuine issue of fact from which a factfinder could rationally conclude that Defendant's articulated legitimate, non-discriminatory reasons were a pretext for age discrimination, or that discriminatory animus was more likely than not the but-for cause of her non-promotion. Diamond fails to point to any

evidence that demonstrates the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller*, 130 F.3d at 1108-09. Nor does Plaintiff present sufficient evidence to establish that age discrimination was more likely than not the but-for cause of the adverse employment action. Thus, Diamond fails to meet her burden in demonstrating that a rational factfinder could conclude that the CTC's rationale for its hiring decision was pretext for age discrimination. Because the Court finds that a reasonable jury could not so find in Plaintiff's favor, there is no genuine issue of material fact and the CTC's Motion for Summary Judgment is granted.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: April 30, 2013
cc: All counsel of record